**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JOEL P.[1],
Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

Case No. 3:25-cv-153
Litkovitz, M.J.

**ORDER**

Plaintiff Joel P. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's statement of errors (Doc. 7), the Commissioner's response in opposition (Doc. 8), and plaintiff's reply memorandum (Doc. 9).

## I. Procedural Background

Plaintiff filed an application for DIB on January 19, 2022, alleging an onset of disability on December 11, 2021, due to depression, back injury, arthritis, nerve damage, stomach damage due to a lap band, and vision issues due to a concussion. (Tr. 179-83, *see also* Tr. 268). His application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Stuart Adkins. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on November 27, 2023. (Tr. 33-70). On March 06, 2024, the ALJ issued a decision denying plaintiff's application. (Tr. 14-32). On March 14, 2025, the Appeals Council denied

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials..

plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2027.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 11, 2021, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. [Plaintiff] has the following severe impairments: degenerative disc disease, lumbar and cervical spine; hernia; shoulder osteoarthritis; coronary artery disease; and ventricular tachycardia (20 CFR 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for about 4 hours and sit for about 6 hours in an 8 hour workday; can never climb ladders[,] ropes[,] and scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; can frequently balance; can occasionally reach overhead, bilaterally; can tolerate occasional concentrated exposure to extreme cold and vibration; should avoid unprotected heights, dangerous machinery and commercial driving; and would require use of cane for ambulation.
>
> 6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

[2] Plaintiff's past relevant work was as a track moving, surfacing, and repair operator, very heavy, semi-

> 7. [Plaintiff] was born [in]… 1972 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. [Plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).
>
> 8. [Plaintiff] has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]
>
> 11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from December 11, 2021, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19-27).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

---

skilled position, performed at the very heavy level; cable television installer, heavy, semi-skilled position, performed at the heavy level; security guard, light, semi-skilled position, performed at the medium level; grain receiver, light, unskilled position, performed at the medium level; department manager, medium, skilled position; overhead crane operator, medium, semi-skilled position, performed at the heavy level; welder, production line, medium, unskilled, position; and compressed gas plant worker, medium, unskilled position. (Tr. 25-26, 63).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled, light occupations in the national economy such as warehouse checker (100,000 jobs in the national economy); marker (50,000 jobs in the national economy); and office mail clerk (100,000 jobs in the national economy). (Tr. 26-27, 65).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Napier v. Comm'r of Soc. Sec*., 127 F.4th 1000, 1004 (6th Cir. 2025) ("Even when an ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations.") (citing *Miller v. Comm'r of Soc. Sec*., 811 F.3d 825, 833 (6th Cir. 2016)).

**D. Specific Errors**

On appeal, plaintiff contends that: (1) the ALJ failed "to meet the articulation demands of regulations when appraising the persuasiveness of the medical opinion evidence of record"; (2) the ALJ "mischaracterizes the opinions of consulting examiner Dr. Tanley"; and (3) the ALJ failed "to adequately consider and account for Plaintiff's mental health impairments throughout his disability evaluation." (Doc. 7 at PageID 1300-09). The Commissioner responds that the ALJ's decision, when read as a whole, adequately demonstrates substantive consideration of the

supportability and consistency factors; the ALJ was not required to consider factors other than supportability and consistency; the ALJ's evaluation of Dr. Tanley's opinion is supported by substantial evidence; and the ALJ's reasoning for including no mental limitations in the RFC finding are "easily traceable." (Doc. 8 at PageID 1314-28).

**1. The ALJ's Evaluation of the Medial Opinion Evidence**

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence. Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[4], including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or his medical opinion(s) . . . the

[4] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

**a. Consultative examiner, James Tanley, Ph.D.**

In September 2022, James Tanley, Ph.D., consultatively examined plaintiff and noted his mental status examination was unremarkable. (Tr. 583-84). He found no specific limitations in understanding, remembering, and carrying out instructions; maintaining attention, concentration, persistence, pace, and performing tasks; responding appropriately to supervision and coworkers in a work setting; and responding appropriately to work pressures. (Tr. 584-85). Dr. Tanley diagnosed plaintiff with an unspecified mood disorder. (Tr. 584). Narratively, Dr. Tanley noted that "[w]ere [plaintiff's] mood problems to worsen, they could negatively impact [the] domain of [attention and concentration] by interfering with his ability to focus and to concentrate." (Tr. 585). He also noted plaintiff's "unremarkable social presentation," self-reports of doing "okay with people," and lack of reported difficulties socially in prior work settings, but Dr. Tanley

remarked that "mood problems could make the free and easy commerce of social interaction on the job a bit problematic." (*Id.*). Finally, Dr. Tanley observed that plaintiff has "no reported history of mental or emotional deterioration in response to work exposure," but his "mood problems could potentially lower his frustration tolerance a bit and put him slightly at risk for the pressures of work." (*Id.*).

The ALJ found Dr. Tanley's opinion "generally persuasive." (Tr. 25). The ALJ evaluated Dr. Tanley's opinion as follows:

> Dr. Tanley examined the claimant and gave conclusions generally consistent with a finding of non-severe mental health impairments and no more than mild limitations in any mental health area. Such a conclusion is consistent with the overall evidence. Additionally, Dr. Tanley's conclusions are generally consistent with the other opinion evidence of record (B2A; B4A).

(Tr. 25) (citing generally to the Disability Determination Explanations at the initial and reconsideration level, Tr. 90-98 and 100-108, respectively). The issue, then, is whether this extremely sparse discussion meets the articulation requirement, *i.e.*, makes "the reasons for the supportability and consistency analysis sufficiently clear for subsequent review to determine whether substantial evidence supports the claimant's disability determination." *Ryan A. v. Comm'r of Soc. Sec.*, No. 1:24-cv-475, 2025 WL 1752000, at *5 (S.D. Ohio June 25, 2025) (quoting *Hritz v. Comm'r of Soc. Sec.*, No. 1:23-cv-235, 2024 WL 83032, at *9 (N.D. Ohio Jan. 8, 2024)).

As noted above, the supportability analysis requires examination of the objective medical evidence and supporting explanations presented by the medical source to support his medical opinion. 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2).

In determining whether the ALJ adequately explained how he evaluated consistency and supportability, "[c]ourts are permitted to look elsewhere in the ALJ's decision as the ALJ does not need to 'spell out every fact a second time.'" *Brenda W. v. Comm'r of Soc. Sec.*, No. 2:24-cv-1128, 2025 WL 2750479, at *3 (S.D. Ohio Sept. 29, 2025) (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). *See also Booker R. v. Comm'r of Soc. Sec.*, No. 3:22-cv-170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) ("[M]eaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support her conclusion."); *Lillian A. v. O'Malley*, No. 4:23-cv-4, 2024 WL 987571, at *2 (W.D. Ky. Mar. 7, 2024) ("[I]t is sufficient for an ALJ's reasons for determining the consistency of a medical opinion to be found elsewhere in the decision[.]").

Viewing the ALJ's opinion as a whole, the evaluation of Dr. Tanley's opinion is supported by substantial evidence. As to supportability, the ALJ discussed Dr. Tanley's findings more extensively in finding plaintiff's mood disorder nonsevere at step two of the sequential evaluation process. (Tr. 20-21). Specifically, the ALJ cited Dr. Tanley's statements that plaintiff: has never been psychiatrically hospitalized and did not regularly receive mental health treatment during the relevant period (Tr. 20, citing Tr. 582); takes Fluoxetine as prescribed by his primary care provider (*Id.*); was fully oriented with normal memory (Tr. 20, citing Tr. 583); had "no difficulty" understanding, remembering, and following instructions (Tr. 20, citing Tr. 585);[6] was "unimpaired" in maintaining attention, concentration, persistence and pace in both simple and multistep tasks (Tr. 20, citing Tr. 585); and had "unremarkable social presentation" with no history of deterioration in work settings (*Id.*).

[6] The ALJ cited to Tr. 585, but Dr. Tanley's note on this issue begins at Tr. 584.

As to consistency with other medical and nonmedical evidence, the ALJ noted that "other opinion evidence indicates no more than mild limitation." (Tr. 20, citing Tr. 90-98 and 100-108). In addition, plaintiff "routinely denied altered mental status, depression, hallucinations, memory loss, and suicidal ideas." (Tr. 20, citing Tr. 366, 467, 521, 537, 548, 555, 1103, 1108, 1113, 1130, 1145, 1158, 1172, and 1179). As the ALJ's opinion, taken as a whole, adequately explains how he considered the supportability and consistency factors in evaluating the persuasiveness of Dr. Tanley's opinion, plaintiff's assignment of error will be overruled as to Dr. Tanley.

**b. State agency reviewing consultants, Mary Hill, Ph.D., and Janet Souder, Psy.D.**

Mary Hill, Ph.D., reviewed plaintiff's file initially in September 2022 and assessed that plaintiff's mental impairments are nonsevere and cause no more than mild limitation in any mental health area. (Tr. 93). Dr. Hill noted that plaintiff's file contains no evidence of memory impairment despite his allegation. There were no diagnoses, complaints, or referrals for cognitive evaluation; and a consultative psychological examination from Dr. Tanley showed no significant symptoms due to psychological impairments. (*Id.*). Upon reconsideration, Janet Souder, Psy.D., reviewed plaintiff's file in April 2023, and adopted Dr. Hill's assessment. (Tr. 103).

The ALJ found the prior administrative medical findings of Drs. Hill and Souder to be "persuasive." (Tr. 24). The ALJ concluded that their opinions "are consistent with the overall evidence, including [plaintiff]'s nature and frequency of treatment, as well as examination findings of record. Moreover, their opinion is generally consistent with the other opinion evidence." (Tr. 24, citing Dr. Tanley's Report, Tr. 580-86).

Although quite succinct, the ALJ's opinion, taken as a whole, adequately explains how he considered the supportability and consistency factors in evaluating the persuasiveness of the state agency reviewing consultants' opinion. As to supportability, the ALJ reviewed and considered the dearth of mental health treatment in the record and plaintiff's unremarkable evaluation by Dr. Tanley, which Drs. Hill and Souder addressed in their assessments. (Tr. 24, 20, 94-5, 104-5).

As for consistency, the ALJ again concluded that Dr. Tanley, Dr. Hill, and Dr. Souder all found plaintiff's mood disorder non-severe and causing "no more than mild limitation in any mental health area." (Tr. 24). In addition, he noted plaintiff's consistent denials of altered mental status, depression, hallucinations, memory loss, and suicidal ideation. (Tr. 24 and Tr. 20, citing Tr. 366, 467, 521, 537, 548, 555, 1103, 1108, 1113, 1130, 1145, 1158, 1172, and 1179).

Plaintiff contends that Dr. Tanley's report "appears to endorse the presence of psychiatric vocational restrictions" that "contradict Drs. Hill and Souder's non-severity premise." (Doc. 7 at PageID 1303, citing Tr. 585). The single page of Dr. Tanley's report on which plaintiff relies provides:

> **Describe the claimant's abilities and limitations in maintaining attention and concentration, and in maintaining persistence and pace to perform simple tasks and to perform multistep tasks.**
> This was unimpaired during the interview portion of the exam. He responded appropriately and in timely fashion to all examiner questions. Given that his verbal intellectual functioning is estimated to be no higher than Average, he would be expected to show little or no difficulty with tasks of increasing complexity and multistep tasks. Were his mood problems to worsen, they could negatively impact this domain by interfering with his ability to focus and to concentrate.
>
> **Describe the claimant's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting.**
> The claimant made an unremarkable social presentation in this setting today. "I do okay with people." He did not report problems with people while on the job. However, his current mood problems could make the free and easy commerce of social interaction on the job a bit problematic.

> **Describe the claimant's abilities and limitations in responding appropriately to work pressures in a work setting.**
> There is no reported history of mental or emotional deterioration in response to work exposure. His current mood problems could potentially lower his frustration tolerance a bit and put him slightly at risk for the pressure of work.

(Tr. 585). The Court sees nothing here that would contradict the finding that plaintiff's mental health impairments are nonsevere. In addition, the ALJ credited Dr. Tanley's examination results but was unconvinced by the examiner's speculation that plaintiff "could" potentially be at "slight" risk for difficulties with work pressure. (Tr. 20, citing Tr. 585).

Plaintiff next contends that, since the ALJ found the opinions of Drs. Hill, Souder, and Tanley consistent with one another, the differences in their opinions triggered heightened articulation requirements under the regulations. (Doc. 7 at PageID 1303-04). The Court disagrees.

The regulation at issue provides:

> Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section . . . .

20 C.F.R. § 404.1520c(b)(3).

Here, the opinions of Drs. Hill and Souder address the same issues and reach identical conclusions. (Compare Tr. 93 with Tr. 103). Drs. Hill and Souder expressed the following opinions:

| Mental Limitation | Selection |
|---|---|
| Understand, remember, or apply information | None |
| Interact with others | None |
| Concentrate, persist, or maintain pace | Mild |
| Adapt or manage oneself | Mild |

(Tr. 93, Tr. 103).

Dr. Tanley, however, did not express a limitation opinion of none, mild, moderate, marked, or extreme in evaluating the four broad functional areas for mental disorders in the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1) commonly known as "paragraph B" criteria. If he had done so, and if he had expressed an opinion different from those of Drs. Hill and Souder (e.g., finding a moderate limitation in ability to adapt or manage oneself), then the heightened articulation requirement would have been triggered pursuant to 20 C.F.R. § 404.1520c(b)(3).

Instead, Dr. Tanley completed a functional assessment and described plaintiff's abilities and limitations in his own terms. (Tr. 581-585). The ALJ found Dr. Tanley's opinion to be consistent with those of Drs. Hill and Souder, and, as the Court found above, the ALJ's opinion is supported by substantial evidence. (Tr. 24-25). Plaintiff claims, without citation to any authority, that "[t]he opinion of Dr. Tanley cannot sustainably stand as the sole cited source of support for the opinions of Drs. Hill and Souder while also not even speaking to the 'same issues' addressed in those opinions." (Doc. 9 at PageID 1332). Plaintiff's assertion confuses two separate issues: (1) the records appropriate for consideration in assessing consistency; and (2) the level of similarity required to trigger the heightened articulation requirement in 20 C.F.R. § 404.1520c(b)(3).

First, the ALJ relied on Dr. Tanley's functional assessment in assessing the consistency of Drs. Hill and Souder because plaintiff cited no other mental health opinions in the record. As the ALJ accurately noted, plaintiff has not regularly received mental health treatment, has never been psychiatrically hospitalized, takes a single mental health medication prescribed by his primary care physician, and routinely denied altered mental status, depression, hallucinations, memory loss, and suicidal ideation. (Tr. 20). Thus, the ALJ appropriately compared the

opinions of Drs. Hill, Souder, and Tanley in evaluating the consistency of their opinions "with the evidence from other medical sources and nonmedical sources in the claim" pursuant to 20 C.F.R. § 404.1520c(c)(2). Plaintiff has cited no authority requiring that the "evidence from other medical sources and nonmedical sources" evaluate the same issue to find them persuasive for purposes of the consistency evaluation required by § 404.1520c(c)(2). Indeed, it would be counterintuitive to require medical and nonmedical sources to evaluate the same issues.

Second, to trigger the heightened articulation requirement in § 404.1520c(b)(3), entitled "Equally persuasive medical opinions or prior administrative medical findings *about the same issue*," the opinions must, as explicitly required by the language of the regulation, be "about the same issue." 20 C.F.R. § 404.1520c(b)(3). Therefore, because Dr. Tanley did not address the same issues as Drs. Hill and Souder, and because Drs. Hill and Souder reached identical conclusions on identical issues, the heightened articulation requirement was not triggered, and plaintiff's statement of error as to the ALJ's evaluation of the opinions of Drs. Hill and Souder will be overruled.

**c. Consultative examiner Babatunde Onamusi, M.D.**

Dr. Babatunde Onamusi, M.D., examined plaintiff for disability purposes on May 25, 2022. (Tr. 391-98). Plaintiff complained of pain in his back, knees, and ankles, which started 15 years prior to the examination. He denied any preceding injuries. He reportedly had a discectomy in 2012 and last saw the surgeon that same year. His most recent MRI of the lumbar spine was in 2020, and he was told that he had arthritis and no specific treatment intervention was recommended. At his examination by Dr. Onamusi, plaintiff reported constant severe pain in his back which was aggravated by standing, walking, bending or lifting. He further reported radiating pain with numbness and tingling down both legs, describing a burning sensation in both

legs that felt like they were on fire. Although he had not sought treatment, plaintiff described constant severe to very severe pain in his knees and ankles, aggravated by standing or walking, as well as weakness in his arms. (Tr. 396).

Examination revealed "normal appearance, not ill-looking and not in distress," with normal muscle strength and tone in all muscle groups. (Tr. 397). Plaintiff's reflexes in his ankles, knees, elbows, and wrists were 2+ and symmetrical with no pedal edema, and normal peripheral pulses. (*Id.*). Dr. Onamusi noted that plaintiff walked with a somewhat broad-based gait with short strides and had apparent difficulty walking on his heels and toes. (Tr. 397-98). Dr. Onamusi observed that plaintiff exhibited "a fair amount of pain behavior during the physical exam with grimacing, moaning, and disproportionate pain response during palpatory examination." (Tr. 398). Plaintiff's back examination revealed symmetrical spine with limited flexion as plaintiff "exhibited so much pain" that Dr. Onamusi discontinued range of motion testing of the spine. (*Id.*). Examination further revealed normal appearance and full range of motion in all extremity joints with no crepitus or demonstrable instability in his knees. (*Id.*).

Plaintiff could grip and grasp with both hands, although grip strength in his right hand (90 pounds) was stronger than with his left (21 pounds). Plaintiff was able to reach forward and push and pull with both hands as well as use his hands for fine coordination and manipulative tasks. (Tr. 398).

Dr. Onamusi assessed chronic back and polyarticular pain of the extremities status post lumbar discectomy in 2012. (*Id.*). He concluded that plaintiff "is able to sit frequently, stand or walk low end of frequently, bend occasionally, squat with support occasionally, climb steps occasionally, lift up to 40 pounds occasionally, [and] use the upper extremities for gross and fine motor tasks frequently." (Tr. 398).

The ALJ found Dr. Onamusi's opinion "somewhat persuasive." (Tr. 24-25). The ALJ determined that Dr. Onamusi "generally concluded that plaintiff can perform activities consistent with a range of light work." (Tr. 24). However, the ALJ described his findings as "somewhat vague with respect to standing and walking." (*Id.*). The ALJ "curbed" the evidence "in a light more favorable" to plaintiff by limiting his RFC to standing and walking for only four hours per day and allowing for the use of a cane. (Tr. 25). The ALJ found Dr. Onamusi's opinion regarding frequent use of the upper extremities in all directions to be "unsupported by his own examination findings" and limited the RFC to only occasionally reaching overhead bilaterally. (Tr. 25, 22).

Plaintiff contends that the ALJ erred by failing to address the consistency of Dr. Onamusi's opinions with other medical evidence, as required by 20 C.F.R. § 404.1520c(b)(2). (Doc. 7 at PageID 1306). The consistency analysis "involves comparing a medical opinion or prior administrative medical finding with *the evidence from other medical sources and nonmedical sources in the claim*." *Teresa A. v. Comm'r of Soc. Sec.*, No. 2:23-cv-036, 2024 WL 62646, at *4 (S.D. Ohio Jan. 5, 2024), *report and recommendation adopted*, 2024 WL 4403751 (S.D. Ohio Oct. 4, 2024) (quoting *Cindy F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-00047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2) (emphasis added)). The ALJ's sole statement specifically evaluating the consistency of Dr. Onamusi's medical opinion occurs in the paragraph immediately preceding his evaluation of Dr. Onamui's opinion. In evaluating the consistency of the opinions of Drs. Green and Hughes, the ALJ stated, "Their findings are generally consistent with the overall evidence, including other opinion evidence." (Tr. 24, citing to Dr. Onamusi's consultative examination report (Tr. 390-98)).

The Court agrees with plaintiff that this single-sentence consistency finding does little to explain the consistency of Dr. Onamusi's opinion with the other medical and nonmedical evidence. However, an examination of the ALJ's entire opinion regarding plaintiff's back and shoulder problems provides additional elucidation. The ALJ accurately discussed medical records from plaintiff's examination shortly before the ALJ hearing at Reid Health Comprehensive Bone and Joint Center. (Tr. 23, citing Tr. 1158-60). Specifically, plaintiff's March 2023 spinal x-ray and MRI showed evidence of a previous hemilaminectomy at L4-L5 and L5-S1 and mild-to-moderate spondylosis with bilateral hip degenerative changes. (Tr. 23, citing Tr. 1159-60). An April 2023 x-ray showed degenerative changes at C5-C6 and C4-C5 with disc height loss and collapse sclerosis osteophytes. (Tr. 23, citing Tr. 1159). Plaintiff's medical provider found that the imaging showed a history of decompression with "no significant residual stenosis" and that a diagnostic EMG was negative for radiculopathy resulting in a conservative treatment recommendation, including epidural injections and medication management. (Tr. 23, quoting Tr. 1160). The ALJ further indicated that plaintiff's October 3, 2023 examination revealed a normal range of motion, normal straight leg raise, and full 5/5 motor strength in plaintiff's lower extremities. (Tr. 23, citing Tr. 1159). At that time, plaintiff demonstrated ataxic short gait without assistance but inability to heel or toe walk or tandem gait without assistance. (Tr. 23, citing Tr. 1158). The ALJ further noted that plaintiff's previous MRI showed mild degenerative AC joint changes and mild tenosynovitis and supraspinatus tendinopathy but no evidence of a rotator cuff tear. (Tr. 23, citing Tr. 578).

As the ALJ discussed, Dr. Onamusi's examination similarly demonstrated 5/5 muscle strength and normal range of motion in his bilateral shoulders and arms (Tr. 23, citing Tr. 391-94) and the ability to reach, push and pull as well as use his hands for fine coordination and

manipulative tasks (Tr. 24, citing Tr. 398). The ALJ noted Dr. Onamusi's finding of "disproportionate" "pain behavior" during his palpatory examination. (Tr. 24, citing Tr. 398). Dr. Onamusi's conclusion, to which the ALJ cited, states in full that his "physical examination revealed considerable pain behavior with minimal objective findings during examination especially of the lower extremities." (Tr. 398). The ALJ found Dr. Onamusi's conclusion[7] that plaintiff can sit, stand, and walk frequently; lift up to 40 pounds occasionally; and frequently use his upper extremities for motor tasks "somewhat consistent with the overall evidence." (Tr. 23-24).

"The Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Canty v. Comm'r of Soc. Sec.*, No. 2:15-cv-2221, 2016 WL 5957679, at *3 (S.D. Ohio Oct. 14, 2016) (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). *See also Stephen D.*, 734 F. Supp. 3d 729, 741-42 (S.D. Ohio 2024) (quoting *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (Court must be able to "trace the path of [the ALJ's] reasoning."). However, in examining the ALJ's decision as a whole, evaluation of a medical opinion within a broader discussion of the medical evidence "suffices to 'connect the dots.'" *Brenda W. v. Comm'r of Soc. Sec.*, No. 2:24-cv-1128, 2025 WL 2750479, at *4 (S.D. Ohio Sept. 29, 2025) (quoting *Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024)). *See Booker R. v. Comm'r of Soc. Sec.*,

[7] In consecutive sentences within the same paragraph, the ALJ reiterated Dr. Onamusi's opinion, the state agency physicians' opinion, and then stated,"[t]heir findings are somewhat consistent with the overall evidence." (Tr. 24). In the next sentence, the ALJ explained how he further limited plaintiff's RFC, specifically referencing Dr. Onamusi's "own examination findings." (*Id.*). When read in context, the Court concludes that the ALJ's use of the word "their" refers to both the state agency physicians and Dr. Onamusi.

No. 3:22-cv-170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) ("[M]eaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support her conclusion."); *Lillian A. v. O'Malley*, No. 4:23-cv-4, 2024 WL 987571, at *2 (W.D. Ky. Mar. 7, 2024) (summarizing *Crum*, 660 F. App'x, 449, 457 (6th Cir. 2016) ("[I]t is sufficient for an ALJ's reasons for determining the consistency of a medical opinion to be found elsewhere in the decision[.]")).

In this case, the ALJ's evaluation of the consistency of Dr. Onamusi's opinion with the rest of the medical evidence is support by substantial evidence. The ALJ noted extensively the chronic pain plaintiff experienced while also considering the imaging and other examinations that found chronic mild to moderate conditions resulting in conservative treatment. His explanation for finding Dr. Onamusi's opinion "somewhat consistent" with the other medical evidence is sufficient to connect the dots. (Tr. 24). Therefore, plaintiff's assignment of error will be overruled as to Dr. Onamusi.

**d. State agency medical consultants Leslie Green, M.D., and Leon Hughes, M.D.**

State agency physician Leslie Green, M.D., reviewed plaintiff's record initially in September 2022. (Tr. 90-98). Based on her review of the record, Dr. Green concluded that plaintiff is limited to lifting 20 pounds occasionally and 10 pounds frequently, sitting for a total of 6 hours and standing/walking for 6 hours total during any given 8-hour workday. (Tr. 95). Due to his knee and back pain, plaintiff can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, crawl, and balance. (*Id.*). Dr. Green found plaintiff should avoid concentrated exposure of extreme cold and vibration and avoid all exposure to hazards, including unprotected heights and operating heavy machinery.

(Tr. 96). State agency reviewing physician Leon Hughes, M.D., reviewed plaintiff's file upon reconsideration in April 2023 and affirmed Dr. Green's assessment. (Tr. 105-06).

The ALJ found the assessments from Dr. Green and Dr. Hughes, "somewhat persuasive," finding their opinions are "generally consistent with the overall evidence, including other opinion evidence." (Tr. 24, citing to Dr. Onamusi's report (Tr. 391-98)). However, the ALJ noted that in "curbing the evidence in a light more favorable" to plaintiff, he reduced standing and walking to only four hours per workday and included an allowance for the use of a cane for ambulation. (*Id.*).

Plaintiff contends that the ALJ failed to evaluate the supportability and consistency of the opinions of Drs. Green and Hughes. (Doc. 7 at PageID 1304-05). As discussed above, the Court must evaluate the ALJ's opinion as a whole to determine if the ALJ adequately explained his supportability and consistency analysis. As for consistency, the ALJ's discussion of plaintiff's other medical records, imaging results, and Dr. Onamusi's findings adequately connect the dots for the Court to find the ALJ's "somewhat persuasive" finding supported by substantial evidence. (Tr. 23-24).

Plaintiff accurately states that there are differences between Dr. Onamusi's conclusions and those of Drs. Green and Hughes. (Doc. 7 at PageID 1305). Specifically, Drs. Green and Hughes concluded plaintiff could occasionally lift 20 pounds (Tr. 95, 105), while Dr. Onamusi concluded plaintiff could occasionally lift up to 40 pounds (Tr. 398). Similarly, Drs. Green and Hughes concluded that plaintiff can stand or walk (with normal breaks) up to about 6 hours per day (Tr. 95, 105) while Dr. Onamusi concluded plaintiff could "stand or walk low end of frequently" (Tr. 398). However, these minor differences fail to undermine the ALJ's consistency determination because he found the opinions of Drs. Green and Hughes only "somewhat

consistent with the overall evidence" and ultimately limited plaintiff's RFC to occasionally lifting or carrying 20 pounds and standing or walking for only 4 hours per day. (Tr. 22).

The ALJ's supportability analysis presents a different question. "Supportability emphasizes a medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions will be.'" *James A. v. Comm'r of Soc. Sec.*, No. 3:22-cv-207, 2023 WL 6307640, at *3 (S.D. Ohio Sept. 23, 2023) (quoting 20 C.F.R. § 404.1520c(c)(1)). "In other words, supportability addresses whether a medical professional has sufficient justification for their *own* conclusions." *Id.* at *4 (quoting *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023)). "As one case cogently explains, 'It is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors could have been applied to the evidence that was presented. The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source.'" *Id.* (quoting *Hardy v. Comm'r of Soc.* Sec., 554 F.Supp.3d 900, 909 (E.D. Mich. Aug. 13, 2021)) (emphasis in original).

In this case, the ALJ's entire supportability analysis consists of "state agency physicians, Dr. Green and Dr. Hughes, reviewed the claimant's file and evidence." (Tr. 24). Nowhere in his decision does the ALJ explain *how* he evaluated the supportability of the state agency physicians' opinions or identify the evidence on which they rely. Accordingly, the ALJ did not satisfy the requirements of 20 C.F.R. § 404.1520c(c)(1). *See Tina M. v. Comm'r of Soc. Sec.*, No. 2:24-cv-4252, 2025 WL 3158048, at *9 (S.D. Ohio Nov. 12, 2025) ("ALJ . . . also specifically noted the state agency physicians' references to records showing normal gait, normal

strength, and physical activities such as gardening all supported their opinions that plaintiff was capable of medium-work.").

The Court recognizes that, because state agency consultants do not possess their own treatment records, it can be challenging to conduct a separate supportability analysis for their medical opinions. *See Tricia H. v. Comm'r of Soc. Sec.*, No. 2:23-cv-2090, 2024 WL 4010389, at *7 (S.D. Ohio Aug. 30, 2024), *report and recommendation adopted*, 2024 WL 4216493 (S.D. Ohio Sept. 17, 2024). However, "[i]f the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents." *Id.*

The Commissioner contends that, because the ALJ found the opinions of Drs. Green and Hughes only partially persuasive and because the ALJ imposed additional limitations beyond those opined by the state agency physicians, any error in evaluating persuasiveness was harmless. (Doc. 8 at PageID 1322) ("Plaintiff does not show how viewing the evidence in the light most favorable to him and including additional limitations hurts his case."). "[E]ven where the ALJ's decision is based on mistakes, this Court affirms those conclusions if the mistakes constituted harmless error." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (citing *Berryhill v. Shalala*, No. 92-5876, 4 F.3d 993, 1993 WL 361792, at *7 (6th Cir. Sept. 16, 1993)). However, if the Court has "substantial doubt" as to whether the agency would have made the same ultimate disability finding without the ALJ's error, it should remand the case. *Berryhill*, 1993 WL 361792, at *7. *See also Rabbers*, 582 F.3d at 654 ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'") (quoting *Connor v. United States Civil Serv. Comm'n*, 721

F.2d 1054, 1056 (6th Cir. 1983)). Plaintiffs bear the burden to demonstrate harm. *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:22-cv-240, 2023 WL 6290070, at *4 (S.D. Ohio Sept. 27, 2023) (finding a supportability-analysis error harmless where plaintiff failed to identify evidence conflicting with the ALJ's conclusion regarding the state agency opinion).

In this case, the ALJ noted that Dr. Onamusi opined that plaintiff could sit, stand, and walk frequently, and Drs. Green and Hughes concluded that plaintiff could perform a range of light work. (Tr. 24, citing Tr. 90-98 and Tr. 100-08).[8] However, "in curbing the evidence in a light more favorable to" plaintiff, the ALJ reduced the RFC to standing and walking for only four hours per workday and allowed for use of a cane for ambulation. (Tr. 24, 22). Although plaintiff contends that the ALJ's RFC failed to account for plaintiff's mental health impairments (which will be addressed below), plaintiff has failed to identify any evidence undermining the ALJ's conclusion that plaintiff could stand and walk for up to four hours per workday with use of a cane. Accordingly, the ALJ's inadequate supportability analysis of the state agency physicians is harmless, and plaintiff's assignment of error will be overruled as to Drs. Green and Hughes.

**2. The ALJ's Evaluation of Plaintiff's Mental Impairments in his RFC Determination is Supported by Substantial Evidence.**

Plaintiff next contends that the ALJ erred in failing to adequately account for plaintiff's mental health impairments throughout his residual functional capacity appraisal. (Doc. 7 at PAGEID 1308-09). In determining a claimant's RFC, an ALJ must consider all of the person's medically determinable impairments, including those that are deemed nonsevere. *Napier*, 127 F.4th at 1007 (quoting 20 C.F.R. §404.1545(a)(2)). Although there may be exceptions, the Sixth

[8] Drs. Green and Hughes concluded that plaintiff could walk for "[a]bout 6 hours in an 8 hour workday." (Tr. 96, 105).

Circuit has concluded that an ALJ adequately accounts for limitations in an RFC where substantial evidence supports the ALJ's finding that a claimant's limitations were no more than mild and the ALJ explicitly stated that he considered all of the claimant's impairments, including those found not to be severe. *Id.*

In this case, the ALJ found plaintiff's medically determinable mental impairments to be nonsevere at step two of the evaluation process. (Tr. 20). In support of this finding, the ALJ accurately noted that: both the state agency reviewing consultants and the consultative examiner found no more than mild limitations in any area; plaintiff had not regularly received mental health treatment during the relevant period and had never been psychiatrically hospitalized; plaintiff routinely denied altered mental status, depression, hallucinations, memory loss, or suicidal ideation; during the consultative examination, he was fully oriented with normal memory and no difficulty in understanding, remembering, or carrying out instructions, maintaining attention, concentration, persistence, and pace to perform simple and multistep tasks, and had an unremarkable social presentation; and plaintiff self-reported no history of deterioration in response to work environments. (*Id.*). In addition, the ALJ stated that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing [plaintiff's] residual functional capacity." (*Id.*).

Even if this explanation did not meet the standard endorsed in *Napier*, the ALJ here reiterated in formulating the RFC that Drs. Hill and Souder found "no more than mild limitation in any mental health area" which was consistent with the nature and frequency of plaintiff's mental health treatment and "examination findings of record." (Tr. 24). Dr. Tanley's consultative examination findings revealed similarly nonsevere mental health impairments with no more than mild limitations in any area. (Tr. 25). The only evidence plaintiff identifies as

requiring a mental health limitation in his RFC is the speculative statements Dr. Tanley expressed that plaintiff "could potentially" be "slightly at risk" of mental health challenges "were his mood problems to worsen." (Doc. 7 at PageID 1308, citing Tr. 585)). However, the ALJ expressly rejected limitations he considered speculative. (Tr. 20). As the ALJ adequately accounted for plaintiff's mental impairments in his RFC, the RFC is supported by substantial evidence, and plaintiff's final statement of error will be overruled.

## III. Conclusion

Based on the foregoing, plaintiff's statement of errors (Doc. 7) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 8/28/2026

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge